IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
NTI AG

               Plaintiff,

   v.

LINMOT, INC., DIANA M. ZENNER, and
JOHN E. ZENNER AND DIANA M. ZENNER
REVOCABLE TRUST DATED MARCH 9, 2005

               Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Case No. 13-CV-1323-JPS

### PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANTS' MOTION FOR A PROTECTIVE ORDER

This action revolves around the misappropriation of more than one million two hundred thousand dollars ($1,200,000.00) from Plaintiff, NTI AG ("NTI"), by the Defendants, LinMot, Inc. ("LinMot"), Diana M. Zenner ("Diana"), and John E. Zenner and Diana M. Zenner Revocable Trust dated March 9, 2005 (the "Zenner Trust"). (Plaintiff's Complaint, filed October 30, 2013, generally.)

LinMot sold products manufactured by NTI in the United States. The products were shipped direct to the customers by NTI, but many of the payments were collected by LinMot for turnover to NTI.[1] (Id., See also Affidavit of Anthony A. Coletti, filed concurrent herewith ("Coletti Aff."), ¶ 4.) To date, the Defendants have failed and refused to remit to NTI sums in excess of one million two hundred thousand dollars ($1,200,000.00) which was collected by

---

[1] LinMot has alleged that it was a dealer for NTI, but the facts and circumstances of the parties' business relationship, including the fact that none of the products were owned or even shipped by LinMot, affirms that LinMot was merely a sales agent.

1

LinMot from NTI's customers. (Id. See also Coletti Aff., ¶ 9.) The misappropriated monies were collected by LinMot in over two hundred (200) separate transactions.

In an effort to account for much of the misappropriated monies without extensive court proceedings, on December 23, 2013, NTI's counsel, Anthony A. Coletti ("Attorney Coletti") submitted Plaintiff's First Request for Admissions to Defendant, LinMot, Inc. to LinMot's counsel, Mark Sostarich ("Attorney Sostarich") ("Requests for Admission"). (Coletti Aff., ¶¶ 2-3 and 9 and Exhibits A and B.) The Requests for Admission are intended to establish, without need for trial or deposition, that one hundred and ninety (190) separate payments made by NTI's customers to LinMot have not been remitted to NTI. The one hundred ninety (190) payments represent a majority of NTI's damage claims. (Coletti Aff., ¶ 9.)

LinMot claims that the seven hundred six (706) Requests for Admission are unduly burdensome and oppressive. In an effort to address LinMot's complaints, Attorney Coletti conferred with Attorney Sostarich on several occasions and indicated that NTI would reduce the number of Requests and its damage claims if Diana provided evidence which affirmed that some (or all) of the monies collected by LinMot and due NTI had been remitted to NTI. (Coletti Aff., ¶ 10.)

To this end, Attorney Coletti and NTI's President, Ronald Rohner, personally audited six hundred sixty-seven (667) payments made to LinMot which LinMot had asserted would establish that the monies misappropriated by the Defendants had, in fact, been remitted to NTI. (Coletti Aff., ¶ 11 and Exhibit C.) As not one of the six hundred sixty-seven (667) payments coincided with the misappropriated funds, NTI has not reduced the number of our Requests for Admission or its damage claims. (Id.)

2

The Defendants now move the Court for a protective order limiting the number of requests for admissions. NTI respectfully submits that each and every one of the Requests for Admission is appropriate and that a response to each Request will reduce the time and expense of this action together with the use of court resources, and that it would be neither unduly burdensome or oppressive for the Court to require LinMot to answer each and every Request. Therefore, NTI respectfully requests that the Court deny the Motion for Protective Order and award NTI the reasonable attorney fees and costs incurred in responding to this Motion pursuant to Federal Rule of Civil Procedure 37(a)(5).

## **ARGUMENT**

"Defendants bear the burden of demonstrating that the requests are unduly burdensome." Sequa Corporation v. Gelmin, 1993 WL 350029 at 1 (S.D.N.Y.) As they have failed to meet this burden, the Motion should be denied.

> The purpose of Rule 36 [which provides for requests for admission] is to expedite the trial by determining what issues are in genuine dispute and by resolving issues which are not disputed. Such a procedure avoids both a delay during the trial and the unnecessary expense of proving a matter which is not in dispute. Berry v. Federated Mutual Insurance Company, 110 F.R.D. 441, 443 (N.D.Ind.1986) citing Burns v. Phillips, 50 F.R.D. 187, 188 (N.D.Ga.1970) and Wright and Miller, 8 Federal Practice and Procedure, § 2252.

In this case, the Requests for Admission fit squarely within the purpose of Rule 36. The Defendants have misappropriated over one million two hundred thousand dollars ($1,200,000.00) which were paid to LinMot in over two hundred (200) separate transactions. Recovery of the full sum will entail proof that LinMot received each and every one of these two hundred (200) plus transactions together with proof that the monies received were not remitted to NTI. Each and every one of the Requests for Admission addresses one of these elements of

3

proof for one hundred and ninety (190) of the two hundred (200) plus transactions. (See Coletti Aff., Ex. A.)

Defendants have already erroneously claimed that six hundred sixty-seven (667) previous payments received by LinMot accounted for the missing monies. Review of those payments has already cost NTI several hundred dollars in attorney fees and over a dozen man hours of time. (Coletti Aff., ¶ 11.) It is a given that many days and many tens of thousands of dollars would have to be spent (or more accurately wasted) at trial (or deposition) if NTI has to establish the misappropriation of each and every one of the two hundred (200) plus payments made to LinMot by NTI's customers through a tedious, time-consuming cross-examination of Diana Zenner.[2] NTI respectfully submits that the Court cannot, and should not, permit this very, very, avoidable circumstance to occur.

Fully one-quarter (1/4) of the Requests for Admission seek confirmation that specified copies of cancelled checks or credit card receipts are true copies and accurately reflect the payments that those records report. As copies of many of those checks were provided to NTI by Diana, it would not be unduly burdensome to require her to formally acknowledge the authenticity of those checks. (Coletti Aff., ¶ 8.)

In Sequa Corporation v. Gelmin, 1993 WL 350029 (S.D.N.Y), the Court ordered a response to ninety percent (90%) of one thousand one hundred forty-one (1,141) requests, most of which were of this precise nature. In Berry v. Federated Mutual Insurance Company, 110 F.R.D. 441, 443 (N.D.Ind.1986), the Court ordered responses to two hundred forty-four (244) requests of a similar nature. In this regard, the Court noted that "a large number of documents must be introduced at trial. The genuineness and authenticity of the majority of these documents

---

[2] Such cross-examination would almost certainly have to be followed by lengthy examination of NTI's principal, agents, and employees to correct Diana's misstatements or omissions at further cost, expense, and wasted time.

4

should not be in dispute.  Therefore, Rule 36 is an appropriate procedure" to narrow the number of documents in dispute.  Id.  Rule 36 is an appropriate procedure to narrow the issues in this case as well.

The Defendants also complain that the number of the Requests for Admission constitute an undue burden.  Where, as here, the nature of the dispute being litigated constitutes a considerable number of discrete financial transactions, courts have specifically rejected this argument.  "Although it is true that the requests encompass many separate items, this is a function of the fact that the issues in this case encompass a large number of discrete financial transactions."  Sequa Corporation v. Gelmin, 1993 WL 350029 at 1 (S.D.N.Y).  As a result, the Sequa court ordered a response to more than twice the number of requests for admission as were submitted to LinMot in this action.  (See also United States v. Watchmakers of Switzerland Information Center, Inc., 25 F.R.D. 346 (S.D.N.Y.1960).  "This is basically a documentary case where the number of documents are voluminous."  As such, a considerable number of requests for admissions was not improper and responses were required.)

Here, the Defendants own actions opened the door to this inquiry.  They chose to convert over two hundred (200) payments due NTI to their own use.  As such, the Defendants cannot, and should not, be heard to complain that they are now being asked to respond to inquiries regarding each of those misdeeds.

Finally, it should be noted that the Defendants seek to avoid their obligation to answer the Requests for Admission on grounds that Diana "was not substantially involved in the decision making of LinMot, Inc. or the company's recordkeeping both of which were done by her late husband.  Locating necessary records to respond to lengthy discovery demands is therefore

5

extremely burdensome and oppressive for the Defendants." (Defendants' Motion at 2.) This assertion is demonstrably false.

Of the one hundred and ninety (190) transactions which are the subject of the Requests for Admission, one hundred seventy-seven (177) occurred after her husband's death. (Coletti Aff., ¶ 7.) Thus, over ninety-three percent (93%) of the checks or credit card payments at issue were negotiated or accepted by Diana within the past year. Likewise, Diana personally deposited over ninety-three percent (93%) of the transactions into the Defendants' various financial accounts within the past year. As such, it is neither burdensome, nor oppressive to require her to account for those transactions. Neither would it be unduly burdensome or oppressive for Diana to search the Defendants records to account for the mere thirteen (13) transactions which occurred while her husband was still alive. (Coletti Aff. ¶ 6.)

Accordingly, NTI respectfully submits that the Defendants' Motion for a Protective Order is wholly without merit and should be denied in total. Furthermore, the facts and law recited herein, and the falsehoods put forth by the Defendants demonstrate that the Motion not substantially justified and NTI is entitled to an award of reasonable attorney fees and costs incurred in responding to this Motion pursuant to F.R.C.P. 37.

Dated this 10th day of April 2014.    Respectfully submitted,

> By: /s Anthony A. Coletti
> Anthony A. Coletti, Wisconsin SBN 1018646
> *Attorney for Plaintiff, NTI AG.*
> Law Offices of Anthony A. Coletti, S.C.
> 101 Evergreen Parkway, Unit #3
> Elkhorn, WI   53121
> Phone:  (262) 723-8000
> Facsimile:  (262) 723-8030
> Email:  tony@colettilaw.com

6

## CERTIFICATE OF SERVICE

       I hereby certify that on April 10, 2014, I electronically filed the foregoing Plaintiff's Brief In Opposition To Defendants' Motion For A Protective Order submitted by Plaintiff, NTI AG, with the Clerk of the Court using CM/ECF system which will send notification of such filing to Mark Sostarich, Esq., Attorney for Defendants, LinMot, Inc., Diana M. Zenner, and John E. Zenner and Diana M. Zenner Revocable Trust dated March 9, 2005.

      /s Anthony A. Coletti
      Anthony A. Coletti, Wisconsin SBN 1018646
      *Attorney for Plaintiff, NTI AG.*
      Law Offices of Anthony A. Coletti, S.C.
      101 Evergreen Parkway, Unit #3
      Elkhorn, WI 53121
      Phone: (262) 723-8000
      Facsimile: (262) 723-8030
      Email: tony@colettilaw.com